UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DENISE LOUISE BYRON-CORBIN,

     Plaintiff,

v.                                  Case No. 8:24-cv-703-MSS-CPT

CAROLYN COLVIN, Acting
Commissioner of Social Security,[1]

     Defendant.
_____/

### REPORT AND RECOMMENDATION

     The Plaintiff seeks judicial review of the Commissioner's denial of her claims for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). For the reasons discussed below, I respectfully recommend that the Commissioner's decision be reversed, and the case be remanded.

I.

     The Plaintiff was born in 1972, has an associate's degree, and has past relevant work experience as a legal secretary, among other occupations. (R. 26, 45–46, 72, 87). The Plaintiff applied for DIB and SSI in May 2020, alleging disability as of June 2019

---

[1] Ms. Colvin became the Acting Commissioner of Social Security on November 30, 2024. Pursuant to Federal Rule of Civil Procedure 25(d), Ms. Colvin is substituted for the former Commissioner, Martin O'Malley, as the Defendant in this suit.

due to cysts, sciatica, hepatitis B and C, carpal tunnel syndrome, degenerative bone disease, and both back and knee problems. *Id.* at 87–88, 102–03. The Social Security Administration (SSA) denied the Plaintiff's applications both initially and on reconsideration. *Id.* at 117–18, 157–58.

At the Plaintiff's request, an Administrative Law Judge (ALJ) conducted a hearing on the matter in August 2023.[2] *Id.* at 38–79, 226. The Plaintiff was accompanied by a non-attorney representative at that proceeding and testified on her own behalf. *Id.* at 38–79. A vocational expert (VE) also testified. *Id.* During the hearing, the Plaintiff amended her alleged onset date to July 2022. *Id.* at 17.

In a decision issued in November 2023, the ALJ determined that the Plaintiff (1) had not engaged in substantial gainful activity since her revised alleged onset date; (2) had the severe impairments of congestive heart failure, chronic liver disease, and degenerative disc disease of the cervical spine; (3) did not, however, have an impairment or combination of impairments that met or medically equaled the severity of any of the listings;[3] (4) had the residual functional capacity (RFC) to perform sedentary work with some exertional, postural, and environmental limitations but no mental restrictions; and (5) based on the VE's testimony, could engage in her past

---

[2] The Plaintiff did not appear at an earlier hearing held in April 2022. (R. 80–86).

[3] The listings are found at 20 C.F.R. Pt. 404, Subpt. P, App'x 1, and catalog those impairments that the SSA considers significant enough to prevent a person from performing any gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). When a claimant's affliction matches an impairment on the list, the claimant is automatically entitled to disability benefits. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *Edwards v. Heckler*, 736 F.2d 625, 628 (11th Cir. 1984).

relevant work as a legal secretary. *Id.* at 14–37. In light of these findings, the ALJ concluded that the Plaintiff was not disabled. *Id.* at 27.

The Appeals Council denied the Plaintiff's subsequent request for review. *Id.* at 1–6. Accordingly, the ALJ's decision became the final decision of the Commissioner. *See Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1313 (11th Cir. 2021) (citation omitted).

II.

The Social Security Act (the Act) defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).[4] A physical or mental impairment under the Act "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

To determine whether a claimant is disabled, the Social Security Regulations (Regulations) prescribe "a five-step, sequential evaluation process." *Carter v. Comm'r of Soc. Sec.*, 726 F. App'x 737, 739 (11th Cir. 2018) (per curiam) (citing 20 C.F.R. § 404.1520(a)(4)).[5] Under this process, an ALJ must assess whether a claimant: (1) is

---

[4] Unless otherwise indicated, citations to the Code of Federal Regulations are to the version in effect at the time of the ALJ's decision.

[5] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals one of the listings; (4) has the RFC to engage in her past relevant work; and (5) can perform other jobs in the national economy given her RFC, age, education, and work experience. *Id.* (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). Although a claimant bears the burden of proof through step four, the burden temporarily shifts to the Commissioner at step five. *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1278–79 (11th Cir. 2020) (citation omitted); *Sampson v. Comm'r of Soc. Sec.*, 694 F. App'x 727, 734 (11th Cir. 2017) (per curiam) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). If the Commissioner carries that burden, a claimant must then prove she cannot engage in the work identified by the Commissioner. *Goode*, 966 F.3d at 1279. In the end, "'the overall burden of demonstrating the existence of a disability . . . rests with the claimant.'" *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

A claimant who does not prevail at the administrative level may seek judicial review in federal court provided the Commissioner has issued a final decision on the claimant's disability application after a hearing. 42 U.S.C. § 405(g). Judicial review is confined to ascertaining whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is buttressed by substantial evidence. *Id.*; *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1305 n.2 (11th Cir. 2018) (per curiam) (citation omitted). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate

to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (internal quotation marks and citations omitted). In evaluating whether substantial evidence bolsters the Commissioner's decision, a court may not decide the facts anew, reweigh the evidence, or make credibility determinations. *Viverette*, 13 F.4th at 1314 (citation omitted); *Carter*, 726 F. App'x at 739 (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam)). Further, while a court will defer to the Commissioner's factual findings, it will not defer to her legal conclusions. *Viverette*, 13 F.4th at 1313–14; *Keeton v. Dep't of Health & Hum. Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

## III.

It appears the Plaintiff raises the following two challenges on appeal: (1) the ALJ did not properly address her mental limitations at step four of the evaluation process; and (2) the ALJ failed (a) to consider the impact of the Plaintiff's hospitalizations on her ability to work, or alternatively (b) to find that the Plaintiff was disabled during the "closed period" when she was hospitalized. (Docs. 12, 18). Each of these challenges will be addressed in turn.

## A.

As referenced above, an ALJ must assess at step two whether a claimant has a medically determinable impairment or combination of impairments that is severe. *McCormick v. Soc. Sec. Admin., Comm'r*, 619 F. App'x 855, 857 (11th Cir. 2015) (per curiam) (citing *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986)); *see also* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4). The severity of an impairment in this

context is "measured in terms of its effect upon [a claimant's] ability to work, and not simply in terms of [a] deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986). An impairment is therefore deemed to be severe only if it significantly limits a claimant's physical or mental capacity to engage in basic work activities. *See* 20 C.F.R. §§ 404.1522(a), 416.922(a); *Bridges v. Bowen*, 815 F.2d 622, 625–26 (11th Cir. 1987) (per curiam). A non-severe impairment, on the other hand, is one that does not cause such a restriction. *See* 20 C.F.R. §§ 404.1522(a), 416.922(a). In the end, the bar for showing a severe impairment is a low one, *McCormick*, 619 F. App'x at 857 (citation omitted), and the finding of any severe impairment is enough to satisfy the step two inquiry, *Packer v. Comm'r, Soc. Sec. Admin.*, 542 F. App'x 890, 891 (11th Cir. 2013) (per curiam) (citing *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)).

Where, as here, a claimant presents a "colorable" claim of a mental impairment, an ALJ must apply the regulatorily-mandated Psychiatric Review Technique (PRT) at step two. *See Moore*, 405 F.3d at 1213–14 (citing 20 C.F.R. § 404.1520a). This technique requires an assessment of how a claimant's mental impairment affects four broad functional areas (known as the Paragraph B criteria): (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).

If an ALJ determines after applying the PRT that a claimant has no or only mild functional restrictions in these four domains, he will generally conclude that the

6

claimant's mental impairment is not severe "unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." *Id.* §§ 404.1520a(d)(1), 416.920a(d)(1).  The Regulations dictate that an ALJ provide a specific explanation for his opinion, including the degree of limitation found in each area. *Id.* §§ 404.1520a(c)(4), (e)(4), 416.920a(c)(4), (e)(4).  An ALJ must then incorporate the results of the PRT into his findings and conclusions. *See Jacobs v. Comm'r of Soc. Sec.*, 520 F. App'x 948, 950 (11th Cir. 2013) (per curiam) (citing *Moore*, 405 F.3d at 1213–14).

The PRT, however, is separate and apart from an ALJ's RFC determination at step four, which mandates that the ALJ gauge a claimant's maximum ability to do work despite her impairments, both severe and non-severe. *See Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1268–69 (11th Cir. 2019) (per curiam) (noting that "[c]onsideration of all impairments, severe and non-severe, is required when assessing a claimant's RFC") (citing *Bowen v. Heckler*, 748 F.2d 629, 634–35 (11th Cir. 1984)).  The RFC analysis at step four therefore represents a more detailed assessment of a claimant's ability to function than the one performed at step two. *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1325 (11th Cir. 2021) (citing *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)); *see also* Soc. Sec. Ruling 96-8p, 1996 WL 374184, at *4 (July 2, 1996) (observing that the criteria used to rate the severity of mental impairments at step two do not equate to an RFC determination, which involves a "more detailed" evaluation that obligates an ALJ to "itemiz[e] various functions contained in the [four] broad" areas).  As a result, even when an ALJ finds

7

that a claimant suffers from a non-severe mental impairment at step two, the ALJ's RFC determination at step four must consist of more than an implicit or perfunctory finding that the claimant's affliction "imposed no significant limitations on [her] work-related mental capacities." *Schink*, 935 F.3d at 1269.

In this case, the ALJ noted at step two of his analysis that the Plaintiff suffered from the medically determinable mental impairments of depression, bipolar disorder, and substance abuse addiction. (R. 20). The ALJ then applied the PRT and found that the Plaintiff had only mild limitations in (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) the ability to adapt or manage herself. *Id.* at 20–21.[6] In support of these assessments, the ALJ cited the Plaintiff's own representations about her capabilities, which were documented in a function report. *Id.* at 629–36. The ALJ also pointed to the mental health evaluations rendered by two state agency psychological consultants, *id.* at 102–16, both of whom opined that the Plaintiff had no more than mild limitations in the Paragraph B criteria, *id.* at 21. Given his Paragraph B findings, the ALJ concluded that the Plaintiff's mental impairments were not severe. *Id.* The ALJ went on to acknowledge, however, in pertinent part:

> The limitations identified in the "[P]aragraph B" criteria are not a[n RFC] assessment but are used to rate the severity of mental impairments at step[ two] . . . of the sequential evaluation process. *The mental [RFC]*

---

[6] The ALJ initially submitted that the Plaintiff had "no limitations in her ability to adapt or manage herself," but subsequently stated that the Plaintiff had "no more than a mild limitation in this area." (R. 21). Given that both parties seemingly agree that the ALJ's latter pronouncement constitutes his true finding on the matter (Doc. 12 at 5); (Doc. 17 at 6), I accept that conclusion as well.

> *assessment used at step[ four] . . . of the sequential evaluation process requires a more detailed assessment.* The following [RFC] assessment reflects the degree of limitation the undersigned has found in the "[P]aragraph B" mental function analysis.

*Id.* (emphasis added).

Despite explicitly recognizing in this passage that his Paragraph B findings at step two were not a substitute for the more detailed mental RFC determination mandated at step four, the ALJ's subsequent step four discussion did not meaningfully address the Plaintiff's mental impairments at all. Instead, the ALJ focused mostly, if not entirely, on the evidence pertaining to the Plaintiff's physical condition, including records concerning her cervical spine, an injury to her kidney, lower extremity swelling in her legs, and hospitalizations she underwent due to sepsis, endocarditis, and other maladies. *Id.* at 22–26. Based on this evidence, the ALJ arrived at an RFC determination that—as alluded to above—confined the Plaintiff to sedentary work. *Id.* The ALJ then relied on the VE's testimony to conclude that the Plaintiff could perform her past relevant work as a legal secretary. *Id.* at 26–27.

The Plaintiff now contends that the ALJ's RFC determination is fatally deficient because he did not adopt the mental limitations he found after applying the PRT at step two or articulate how the Plaintiff could perform her duties and responsibilities as a legal secretary notwithstanding those limitations. (Doc. 12 at 6–17 & nn. 2–3). The Plaintiff's argument is well-founded.

As mentioned above, even though the ALJ ostensibly affirmed that his Paragraph B findings at step two were not a proxy for the more thorough mental RFC

9

assessment necessitated at step four (R. 21), the ALJ's ensuing examination of the Plaintiff's RFC and her ability to work contains no such analysis, *id.* at 22–26. Other than briefly alluding to the Plaintiff's self-reported difficulty with memory and concentration, history of substance abuse, and unremarkable mental status findings during an emergency room (ER) visit, the ALJ did not expressly engage in any substantive assessment of the extent to which the Plaintiff's medically determinable impairments of depression, bipolar disorder, and substance abuse addiction affected her vocational capacity. *Id.* In fact, the ALJ did not make *any* particularized findings at step four regarding the Plaintiff's mental limitations. *Id.*

The ALJ's failure to explicitly weigh the Plaintiff's mental impairments at step four in a meaningful manner is especially notable given the requirements of the legal secretary position. Under the U.S. Department of Labor's *Dictionary of Occupational Titles* (DOT),[7] the occupation of legal secretary has a specific vocational preparation (SVP)[8] score of six and a "reasoning level" of four.[9] *See* DOT 201.362-010, 1991 WL 671667 (G.P.O. 4th ed. 1991); *see also* Soc. Sec. Ruling (SSR) 00-4p, 2000 WL

---

[7] "The DOT is an extensive compendium of data about the various jobs that exist in the United States economy, and includes information about the nature of each type of job and what skills or abilities they require." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1357 n.2 (11th Cir. 2018). The DOT is published by the Department of Labor and "is used by the Commissioner . . . to adjudicate benefit applications by claimants." *Viverette*, 13 F.4th at 1311 (citing 20 C.F.R. § 416.966(d)(1)).

[8] An SVP is defined as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." DOT, *App'x C Components of the Definition Trailer* § II, 1991 WL 688702 (G.P.O. 4th ed. 1991). An SVP of six necessitates "[o]ver [one] year up to and including [two] years." *Id.*

[9] "Reasoning levels" are measured on a scale of one to six, with one requiring the least mental engagement and six demanding the most. *See* DOT, *App'x C Components of the Definition Trailer* § II, 1991 WL 688702 (G.P.O. 4th ed. 1991); *see generally Buckwalter*, 5 F.4th at 1322.

1898704, at *3 (Dec. 4, 2020).  An SVP of six qualifies the legal secretary job as "skilled" work, which the Regulations define as follows:

> Skilled work requires qualifications in which a person uses judgment to determine the machine and manual operations to be performed in order to obtain the proper form, quality, or quantity of material to be produced. Skilled work may require laying out work, estimating quality, determining the suitability and needed quantities of materials, making precise measurements, reading blueprints or other specifications, or making necessary computations or mechanical adjustments to control or regulate the work.  Other skilled jobs may require dealing with people, facts, or figures or abstract ideas at a high level of complexity.

20 C.F.R. § 404.1568(c).

A reasoning level of four means that an individual employed as a legal secretary must be able to (1) "[a]pply principles of rational systems[10] to solve practical problems and [to] deal with a variety of concrete variables in situations where only limited standardization exists[; and (2)] [i]nterpret a variety of instructions furnished in written, oral, diagrammatic, or schedule form."  DOT, *App'x C Components of the Definition Trailer* § II, 1991 WL 688702 (G.P.O. 4th ed. 1991).  The DOT further directs that to be able to perform the job of legal secretary, a person must also be able to "[s]peak extemporaneously on a variety of subjects," "deal[ ] with people," and "attain[ ] precise set limits, tolerances, and standards."  *Id.*  The ALJ did not describe at step four how he came to the conclusion that the Plaintiff could meet the requirements of the legal secretary position despite her mental limitations.

---

[10] Examples of rational systems include bookkeeping, internal combustion engines, and electric wiring systems.  *See* DOT 201.362-010, 1991 WL 671667 (G.P.O. 4th ed. 1991)

The fact that the ALJ did not adequately explain his evaluation of the Plaintiff's mental impairments at step four is dispositive of the Plaintiff's appeal under the circumstances presented.  In short, the ALJ did not provide the Court "with sufficient reasoning for determining that the proper legal analysis . . . [was] conducted[.]" *Schink*, 935 F.3d at 1269 (quoting *Keeton*, 21 F.3d at 1066).  And as the Eleventh Circuit made clear in *Schink*, this type of error "mandates reversal in its own right." *Id.* (internal quotation marks and citation omitted); *see also Hudson v. Heckler*, 755 F.2d 781, 785 (11th Cir. 1985) (per curiam) (stating that an ALJ's failure to consider a claimant's impairments in combination dictates "that the case be vacated and remanded for the proper consideration").  Indeed, a number of courts in this District have cited this rationale in reversing ALJ decisions under substantially similar circumstances. *See, e.g.*, *Ashcraft v. Comm'r of Soc. Sec.*, 2024 WL 619553, at \*3–4 (M.D. Fla. Feb. 14, 2024) (remanding the case where the ALJ found mild limitations in the four broad mental functional areas but "failed to adequately consider" the claimant's mental impairments in formulating the claimant's RFC); *Tibbetts v. Comm'r of Soc. Sec.*, 2021 WL 6297530, at \*8 (M.D. Fla. Dec. 21, 2021) (reversing the ALJ where the ALJ deemed the claimant to have mild mental functioning limitations but engaged in a "perfunctory and insufficient" assessment of the evidence of the claimant's mental health impairments at step four), *report and recommendation adopted*, 2022 WL 61217 (M.D. Fla. Jan. 6, 2022); *Mitchell v. Comm'r of Soc. Sec.*, 2021 WL 4305088, at \*6 (M.D. Fla. Sept. 22, 2021) (deeming remand to be necessary where "the ALJ failed to expressly construct a logical bridge between his finding that [the claimant] had mild

impairments in all four areas of mental functioning and yet no limits whatsoever in the mental functions associated with work"); *Dulude v. Comm'r of Soc. Sec.*, 2021 WL 4026268, at \*3–4 (M.D. Fla. Sept. 10, 2021) (reversing the ALJ's decision where the ALJ found mild limitations in the Paragraph B functional areas; determined that the claimant's mental affliction was not severe; acknowledged that his Paragraph B findings were not a substitute for the "more detailed assessment" required at step four; but, "when determining [the claimant's] RFC[,] . . . discussed only her many physical impairments [and] . . . not . . . whether [her] mild mental limitations . . . may [have] cause[d] additional work-related limitations"); *Jasper v. Saul*, 2020 WL 5270671, at \*4– 5 (M.D. Fla. Sept. 4, 2020) (same); *Thompson v. Comm'r of Soc. Sec.*, 2020 WL 1067162, at \*4 (M.D. Fla. Jan. 15, 2020) (same), *report and recommendation adopted*, 2020 WL 1065181 (M.D. Fla. Mar. 5, 2020).  The ALJ's lone declaratory pronouncement at step four that his RFC "assessment reflect[ed] the degree of limitation . . . [he] found in the '[P]aragraph B' mental function analysis" does not remedy this error.  *See Dulude*, 2021 WL 4026268, at \*3–4 (remanding even though the ALJ made an equivalent statement); *see also Ashcraft*, 2024 WL 619553, at \*3–4; *Tibbetts*, 2021 WL 6297530, at \*8; *Mitchell*, 2021 WL 4305088, at \*6.

In an effort to avoid this outcome, the Commissioner contends that the Plaintiff does not show the ALJ improperly omitted any mental limitations in his RFC.  *See* (Doc. 17 at 7–9).  This argument misconstrues the nature of the Plaintiff's challenge. As the Plaintiff highlights in her reply memorandum (Doc. 18 at 1) and as noted above, the flaw in the ALJ's decision is that he failed to either include mental restrictions in

his RFC determination *or* sufficiently articulate why he elected not to do so despite finding the Plaintiff's medically determinable mental impairments caused her to have "mild" limitations in the four Paragraph B functional areas. *See Schink*, 935 F.3d at 1269 (stating that the ALJ's failure to expressly address the claimant's mental impairments at step four meant that the court had "no way of knowing whether [the ALJ's analysis] included the more detailed assessment required") (internal quotation marks omitted).

The Commissioner alternatively contends that the ALJ "fully" evaluated the Plaintiff's mental impairments at step two and that "'it would be a needless formality to have the ALJ repeat [a] substantially similar factual analys[is]" at step four. (Doc. 17 at 9) (quoting *Raper v. Comm'r of Soc. Sec.*, 89 F.4th 1261, 1275–76 (11th Cir. 2014)). This line of argument also misapprehends the Plaintiff's claim. The deficiency with the ALJ's decision again is that it does not adequately demonstrate that the ALJ properly assessed the Plaintiff's mental impairments at step four, as he was compelled to do. *See Schink*, 935 F.3d at 1268–69 (stating that an ALJ must take into account all of a claimant's impairments, severe and non-severe, in determining a claimant's RFC at step four). Contrary to the Commissioner's suggestion, the Court cannot simply assume that the ALJ did so. *See Acre v. Comm'r of Soc. Sec.*, 2024 WL 36061, at *2 (11th Cir. Jan. 3, 2024) (per curiam) ("[W]e decline to simply assume—because the ALJ considered [the claimant's] mental limitations at step [two] and found them to be non-severe—that the ALJ did in fact consider whether [the claimant's] mental limitations affected her RFC[.]"); *Schink*, 935 F.3d at 1269 ("Even the most favorable

14

interpretation of the ALJ's opinion—namely, that the ALJ considered [the claimant's] mental conditions in the RFC assessment *sub silentio* and implicitly found that they imposed no significant limitations on his work-related mental capacities—would not permit us to affirm[.]") (internal quotation marks and citation omitted).

In light of all the above, I find that the Plaintiff's first challenge has merit and alone warrants reversal.[11]

B.

Because the Plaintiff's first claim of error is dispositive of her appeal, the Court need not resolve her second challenge. As I discuss below, there are good reasons for the Court not to do so, at least in large part.

As noted above, the Plaintiff argues in her second claim of error that the ALJ erred by not evaluating the impact her hospitalizations had on her ability to engage in substantial gainful activity on a regular and sustained basis. (Doc. 12 at 17–21). As also noted above, the Plaintiff appears to raise an alternative argument that she was entitled to a "closed period" of disability during the time frame she was hospitalized. *Id.* I begin with the second of these two contentions, as it can be readily disposed of.

In a "closed period" case, the ALJ must determine whether a claimant was disabled for a finite period that "started and stopped prior to the date of [the ALJ's] decision." *Mitchell v. Comm'r of Soc. Sec.*, 393 F. App'x 651, 652 (11th Cir. 2010) (per curiam) (quoting *Pickett v. Bowen*, 833 F.2d 288, 289 n.1 (11th Cir. 1987)). "A claimant

---

[11] In reaching this result, I express no opinion as to whether the ALJ should have included any mental limitations in his RFC determination or in his hypotheticals to the VE.

may request benefits for a 'closed period' of disability[ ] even if [she] is later able to work." *Rodriguez v. Comm'r*, 737 F. App'x 514, 516 (11th Cir. 2018) (quoting *Pickett*, 833 F.2d at 289 n.1). A claimant who prevails on a "closed period" claim is entitled to a "lump sum" payment. *Id.* (citing *Pickett*, 833 F.2d at 289 n.1).[12]

The Plaintiff's closed period claim fails. To start, it is unclear that the Plaintiff properly raised this issue at the administrative level, *see* (R. 627), and there is decisional law that her failure to do so precludes her from pursuing it now, *see Rambo v. Comm'r of Soc. Sec.*, 2021 WL 5843106, at *3 (M.D. Fla. Dec. 9, 2021) ("Since [the c]laimant did not request a closed period of disability before the ALJ, she cannot argue here that the ALJ failed to consider it, and the claim is due to be rejected.").[12] Irrespective of this threshold deficiency, the Plaintiff devotes scant attention to her closed period claim in her submissions and has therefore waived that contention. *See Grant v. Soc. Sec. Admin., Comm'r*, 2022 WL 3867559, at *2 (11th Cir. Aug. 30, 2022) (concluding that a party abandons a claim when, among other things, she "raises it in a perfunctory manner without supporting arguments and authority") (citing *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681–82 (11th Cir. 2014)); *Battle v. Comm'r, Soc. Sec. Admin.*, 787 F. App'x 686, 687 (11th Cir. 2019) (per curiam) ("Issues raised in a perfunctory manner . . . are generally deemed to be waived.") (internal quotation marks and citation omitted); *Outlaw v. Barnhart*, 197 F. App'x 825, 828 n.3 (11th Cir.

---

[12] The Commissioner does not assert that the Plaintiff was ineligible for a closed period or otherwise address the matter. (Doc. 17 at 11).

16

2006) (per curiam) (finding that a plaintiff waived an argument "because he did not elaborate on [the] claim or provide citation to authority about [it]") (citation omitted).

The Plaintiff's second contention regarding the impact her hospitalizations had on her ability to work requires a more extended discussion. The RFC is an assessment of the claimant's capacity to "do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." *See* SSR 96-8p, 1996 WL 374184, *1 (July 2, 1996). When determining a claimant's RFC, an ALJ must assess all relevant evidence of record, including—of import here—the frequency, duration, and disruptiveness of any medical treatment the claimant is receiving. *Id.* at *5. A "regular and continuing basis" in this context means "[eight] hours a day, . . . [five] days a week, or [on] an equivalent work schedule." *Id.* at *1.

In his decision here, the ALJ noted that the Plaintiff was hospitalized in early July 2022 because of severe sepsis secondary to a staph infection with tricuspid valve endocarditis.[13] (R. 23–24). The ALJ also noted that the Plaintiff—who had a history of intravenous drug abuse—was treated with antibiotics but left the hospital against her providers' recommendation before completing the multi-week course. *Id.* The ALJ further observed that the Plaintiff was again hospitalized in late July 2022 for tricuspid valve endocarditis with subsequent sepsis present on admission, and that the

---

[13] Tricuspid valve endocarditis is "a serious medical condition characterized by the inflammation and infection of the tricuspid valve, which is located between the right atrium and the right ventricle of the heart." *See Tricuspid Valve Endocarditis: Understanding Infection of the Heart Valve*, DoveMed, https://www.dovemed.com/health-topics/focused-health-topics/tricuspid-valve-endocarditis-understanding-infection-heart-valve (last visited Jan. 23, 2025).

Plaintiff thereafter underwent aspiration of the tricuspid valve and remained on antibiotics for six weeks to treat her staph infection before being discharged in early September 2022. *Id.* at 24. The ALJ pointed out as well that the Plaintiff had another extended hospital stay in October 2022 related to a tricuspid valve replacement for recurrent endocarditis. *Id.* The ALJ concluded by stating:

> Overall, the record revealed that the [Plaintiff] had a prolonged hospitalization to treat her endocarditis and [staph] infection related to substance abuse . . . after she previously left the hospital against medical advice. . . . While the [Plaintiff's] endocarditis was caused by her substance abuse, the record indicates that the [Plaintiff's] physical impairments now exist independently of any substance use disorder(s). Less than one year after the initial presentation of endocarditis and when she was finally compliant with recommended treatment status post valve replacement, she responded well.

*Id.* at 26.

The Plaintiff now argues that the ALJ erred in deeming her capable of engaging in full-time work without considering the "vocational impact" of her "repeated and extensive hospitalizations," which she calculates totaled 114 days. (Doc. 12 at 19–20). The Plaintiff seeks to bolster this contention by relying on testimony offered by the VE that an individual cannot maintain competitive employment if she misses more than one day of work per month or twelve days per year. (R. 76). For her part, the Commissioner does not confront this argument and instead asserts only that the Plaintiff fails to show the ALJ erred in finding that the Plaintiff's condition improved within one year. (Doc. 17 at 10–11). The resolution of the parties' differing positions is more nettlesome than their briefing suggests.

18

As described above, the ALJ recited in his decision the nature and extent of the Plaintiff's virtually uninterrupted hospitalizations throughout the summer and fall of 2022. (R. 22–26). Absent from that recitation, however, is any analysis by the ALJ as to whether the number, frequency, and/or duration of the Plaintiff's hospitalizations affected either her RFC or her capacity to maintain full-time work. *See* SSR 96-8p, 1996 WL 374184, *5 (instructing that the RFC "must be based on *all* of the relevant evidence in the case record, such as . . . [t]he effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (e.g., frequency of treatment, duration, disruption to routine, side effects of medication)").

The Eleventh Circuit has issued two unpublished opinions that are arguably pertinent to this question, neither of which is cited by the parties. In the most recent of these cases—*Blackmon v. Comm'r of Soc. Sec.*, 2024 WL 3495022 (11th Cir. July 22, 2024) (per curiam)—the claimant asserted that the ALJ's RFC was "materially deficient because it d[id] not include any limitations relating to [the claimant's] medical absences despite the extraordinary number of visits and hospitalizations documented in the record." *Id*. at *7. To buttress this assertion, the claimant maintained that during the pertinent time frame (which she purported amounted to nearly 680 days), "she was variously admitted into the hospital, visiting the ER," or meeting with "one of her numerous primary and specialist treatment providers on at least [seventy-one of] those . . . days, which equate[d] to 3.14 times every [thirty] days." *Id*. Akin to the Plaintiff here, the claimant also highlighted that the VE testified before the ALJ that there would be no jobs available for "an individual who [was] going to

19

be tardy, absent, leave early, or any combination of those . . . greater than one day a month on a regular and ongoing basis." *Id.* (internal quotation marks omitted).

The panel in *Blackmon* ultimately concluded that the ALJ did not err in failing to incorporate the claimant's absenteeism as a limitation in his RFC determination but only after carefully analyzing the number, frequency, and length of the claimant's numerous medical absences, albeit over a shorter temporal span than the one proposed by the claimant. *Id.* The panel explained:

> Looking to the [designated] time period . . ., [the claimant] had medical events on only eight days, for an average of just over [one] time per [thirty] days. And [the claimant] had multiple medical events in just one of the months between her amended onset date and her filing [of her disability application], which [was] hardly having multiple medical events in a month on "a regular and ongoing basis." Moreover, nothing in the record show[ed] that [the claimant] could not schedule future appointments outside of work hours, schedule more than one appointment per day, or schedule appointments on her off days, which would minimize the need to miss work.

*Id.* The panel additionally observed that "[six] of the [claimant's eight] appointments were [thirty] minutes or less, and [that] several were virtual." *Id.* at *7 n.5.

The panel's ruling in *Blackmon* supports the proposition that a claimant's absenteeism caused by hospitalizations and other medical appointments may be relevant to an ALJ's RFC determination. At least one other court in this District has similarly interpreted *Blackmon*. *See Mayer v. O'Malley*, 2024 WL 4297906, at *4 (M.D. Fla. Sept. 26, 2024) (citing *Blackmon* in refusing to credit the Commissioner's argument that a claimant's absences due to appointments and hospitalizations were not an

appropriate consideration in determining a claimant's RFC).  As the court in *Mayer*
pointed out in this respect, "the Eleventh Circuit in *Blackmon* did not reject the notion
that absenteeism from hospitalizations can be factored into an RFC; . . . [it] merely
found on the facts before it that the ALJ did not err given the actual number of days
the claimant was absent and the lack of record evidence on whether future absences
could be avoided." *Id.*

The problem with relying on *Blackmon* here is that it seemingly conflicts with an
earlier opinion issued by a different panel in *Cherkaoui v. Comm'r of Soc. Sec.*, 678 F.
App'x 902, 904 (11th Cir. 2017) (per curiam).  In *Cherkaoui*, like in *Blackmon*, the
claimant contended that the excessive number of medical appointments she had to
attend due to her ailments rendered her disabled "because she would have to be absent
too frequently to be employable." *Id.* at 903.  The panel in *Cherkaoui* summarily
dispatched this argument, stating:

> [W]hether the number of medical appointments affects [the claimant's] ability to
> work is not an appropriate consideration for assessing her [RFC] because that
> determination considers only the functional limitations and restrictions
> resulting from medically determinable impairments.  *See* SSR 96-8p.  The
> number of medical appointments [the claimant] attended is not a
> functional limitation caused by her impairments that would affect her
> physical or mental capabilities.  Moreover, nothing in the record
> indicates that [the claimant] was required, or would be required, to
> schedule her medical appointments during working hours so that they
> would interfere with her ability to obtain work.

*Id.* at 904 (emphasis added).

The panel in *Blackmon* did not cite *Cherkaoui*, much less distinguish it. And, as I said, the parties do not mention, much less discuss, these opinions in their filings either. In light of this fact, as well as the lack of clarity in the parties' briefings on this issue, it is not all clear from the factual and legal record before the Court that the approximately 114 days the Plaintiff spent in the hospital were immaterial to the ALJ's disability determination. *Cf. Cherkaoui*, 678 F. App'x at 904 ("[T]he number of medical appointments affect[ing a claimant's] ability to work is not an appropriate consideration for assessing her [RFC.]") *with Blackmon*, 2024 WL 3495022, at *7 & n.5 (upholding the ALJ's decision not to include absenteeism as a restriction in the claimant's RFC in part because the medical events at issue averaged only "just over [one] time per [thirty] days," were mostly "[thirty] minutes or less, and several were virtual"); *Mayer*, 2024 WL 4297906, at *4 (reversing the ALJ's decision in part where the number of days of hospitalizations "account[ed] for more than double the number of total absences (including doctor's appointments) during the relevant period in *Blackmon*").

The Commissioner's suggestion that the Court need not decide this matter because the Plaintiff's hospitalizations were secondary to her substance abuse problems is unavailing. *See* (Doc. 17 at 10–11). This is because while the ALJ referred to the Plaintiff's struggles with substance abuse in his decision, the ALJ did not predicate his disability finding on those struggles. (R. 23–26). And it is well settled that a court may not uphold an ALJ's assessment based on a post-hoc rationalization offered by the Commissioner on appeal. *See Watkins v. Comm'r of Soc. Sec.*, 457 F.

App'x 868, 872 (11th Cir. 2012) (per curiam) ("We cannot affirm based on a post hoc
rationale that 'might have supported the ALJ's conclusion.'") (quoting *Owens v.
Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam)); *Dempsey v. Comm'r of Soc.
Sec.*, 454 F. App'x 729, 733 (11th Cir. 2011) (per curiam) (same); *Brown v. Comm'r of
Soc. Sec.*, 2021 WL 2917562, at *4 (M.D. Fla. July 12, 2021) (rejecting the
Commissioner's attempt to use a post-hoc rationalization to explain away the ALJ's
failure to resolve a pertinent question).[14]

In sum, because of the inadequacy of the parties' submissions on the Plaintiff's
claim relating to the impact of her hospitalizations on her ability to work under
*Blackmon* and *Cherkaoui* and because of the dispositive nature of the Plaintiff's first
challenge, I respectfully recommend that the Court leave the disposition of the
Plaintiff's second challenge, particularly her *Blackmon/Cherkaoui* hospitalization
claim, for another day.

## IV.

For the foregoing reasons, I respectfully recommend:

1.    The Commissioner's decision be reversed and the case be remanded, with
the instruction that the Commissioner reassess the entire record on remand and

---

[14] In her reply brief, the Plaintiff argues for the first time that the ALJ erred by not addressing the
severity of her endocarditis, which she posits "provides an independent basis for remand." (Doc. 18
at 6). As explained in the Scheduling Order, however, the Plaintiff "may not assert any new legal
theory or any new claim for relief" in her reply brief. (Doc. 11 at 5). And, as with her "closed period"
contention, the perfunctory manner in which the Plaintiff raises this issue constitutes a waiver on the
matter in any event. *See Grant*, 2022 WL 3867559, at *2; *Battle*, 787 F. App'x at 687; *Outlaw*, 197 F.
App'x at 828 n.3.

provide sufficient explanations and readily identifiable evidentiary support for her decision, including with respect to the two challenges raised by the Plaintiff here. *See Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (holding that, on remand, the ALJ must reassess the entire record) (citation omitted).

2.    The Clerk of Court be directed to enter Judgment in the Plaintiff's favor and to close the case.

3.    The Court reserve jurisdiction on the matter of attorney's fees and costs pending further motion.

Respectfully submitted this 25th day of January 2025.

HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

**NOTICE TO PARTIES**

A party has fourteen (14) days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.  A party's failure to file written objections, or to move for an extension of time to do so, waives that party's right to challenge on appeal any unobjected-to factual finding(s) or legal conclusion(s) the District Judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1).

Copies to:
Honorable Mary S. Scriven, United States District Judge
Counsel of record